THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAITLIN WALSH, on behalf of herself and all others similarly situated, | )<br>)<br>) |
| *Plaintiffs*, | ) No. 23 C 14380<br>) |
| v. | ) Judge Virginia M. Kendall<br>)<br>) |
| DANIA INCORPORATED, | )<br>) |
| *Defendant.* | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Caitlin Walsh, who is a visually-impaired and legally blind person, wanted to buy a coffee table from Defendant Dania Incorporated through their website. Due to various access barriers, Walsh was unable to enjoy a shopping experience comparable to that of sighted customers. Walsh brings a claim of discrimination and seeks declaratory relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 *et seq.*, alleging that Dania, by maintaining its website in a way that is not readily accessible to and usable by blind individuals, discriminated against her by denying her full and equal access to and enjoyment of the goods, benefits and services of the Website. (Dkt. 1). Dania moves to dismiss primarily on the basis that a website is not a "public accommodation" under the ADA. (Dkt. 15). For the reasons below, Dania's motion to dismiss [15] is granted in part and denied in part.

**BACKGROUND**

Dania, a furniture company, owns and operates www.daniafurniture.com ("Website"), which offers products and services for sale to the public. (Dkt. 1 at ¶¶ 37–38). Walsh, who is a

1

visually-impaired and legally blind person,[1] cannot use a computer without the help of screen-reading software. (*Id*. at ¶ 39). Walsh, a proficient screen-reader user, uses a screen reader to access the internet. (*Id*.)

On September 7, 2023 and September 8, 2023, Walsh visited Dania's website, with the assistance of her screen-reading software, in hopes of purchasing one of Dania's coffee tables. (*Id*. at ¶ 42). In doing so, Walsh discovered that Dania's website contained multiple access barriers that prevented her from enjoying the kind of shopping experience sighted individuals enjoy. (*Id*.). Those access barriers include, among other things, "missing alt-text, hidden elements on web pages, incorrectly formatted lists, unannounced pop ups, unclear labels for interactive elements, the requirement that some functions be performed solely with a mouse," faulty hyperlinks, and inaccessible check boxes. (*Id*. at ¶¶ 43–45). Because of these barriers, Walsh could not independently navigate the Website or complete the desired transaction. (*Id*. at ¶ 50).

Walsh filed suit against Dania, alleging that she experienced discrimination based upon her disability, in violation of Title III of the ADA, 42 U.S.C. § 12182 *et seq*., when the access barriers on Dania's website foreclosed her from full and equal access to Dania's online store. Walsh alleges that Dania's discrimination is intentional, and that Dania lacks a corporate policy that would cause its website to become and remain accessible. (*Id*. at ¶¶ 52, 55).

Dania moves to dismiss Walsh's complaint, (Dkt. 15), arguing that websites are not places of public accommodation and, even if they are, Walsh was not discriminated against. (Dkt. 16).

---

[1] Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. (Dkt. 1 at ¶ 2).

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id*. (citing *W. Bend. Mut. Ins.*, 844 F.3d at 675). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Kaminski*, 23 F.4th at 776 (quoting *Twombly*, 550 U.S. at 555).

**DISCUSSION**

A claim under Title III of the ADA requires Walsh to show (1) that she is disabled within the meaning of the ADA, (2) that Dania owns, leases, or operates a place of public accommodation, and (3) that Walsh was discriminated against on the basis of her disability. *See Mohammed v. DuPage Legal Assistance Found.*, 781 F. App'x 551, 552 (7th Cir. 2019) (citing *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592–93 (7th Cir. 2018)); *Thomas v. Kohl's Corp.*, No. 17 C 5857, 2018 WL 704691, at *3 (N.D. Ill. Feb. 5, 2018); *see also* 42 U.S.C.

3

§ 12182(a); 28 C.F.R. § 36.201(a). The parties do not dispute that Walsh is disabled within the meaning of the ADA.

### I. Place of Public Accommodation

Title III of the ADA sets forth a national mandate for the elimination of discrimination against individuals with disabilities in public accommodations and services operated by private entities. 42 U.S.C. § 12182. Sales establishments are included within the meaning of "public accommodation[s]" under the ADA. § 12181(7)(E).

Dania argues that it has not denied Walsh access to a place of public accommodation because Title III's reference to places of public accommodation is limited to physical spaces, (Dkt. 16 at 6), but there is nothing in the text of 42 U.S.C. § 12181(7) clearly establishing such a limitation. Dania describes § 12181(7)'s list of public accommodations as "a list of physical facilities where a business may offer goods or services to the public." (Dkt. 16 at 7). It is true that many of the public accommodations listed in § 12181(7) can operate exclusively in physical facilities. But, as evidenced by the COVID-19 pandemic and related shutdowns, it is equally possible for professional offices of healthcare providers, places of education, and even furniture stores to exchange goods and services with the public exclusively through the internet.

Dania also points to 12182(a)'s rule that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who *owns, leases (or leases to), or operates a place of public accommodation*" as evidence that the statute refers exclusively to physical spaces. (Dkt. 16 at 7). Dania ignores that this language can apply

4

equally to the operation of a website. Indeed, the entire dispute here is about how Dania operates a website that it presumably owns or leases.

The Courts of Appeal for the Third, Fifth, Sixth, and Ninth Circuits agree with Dania that a place of public accommodation must be a physical space. *See Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534 (5th Cir. 2016), *cert. denied*, 583 U.S. 814 (2017); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114–15 (9th Cir. 2000); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613–14 (3d Cir. 1998); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) (en banc). They reason that "[e]very term listed in § 12181(7) . . . is a physical place open to public access." *Parker*, 121 F.3d at 1014. Applying the canon of *noscitur a sociis*—meaning, "[i]t is known from its associates"—these courts held that non-physical establishments or entities are not places of public accommodation within the meaning of Title III. *Id*.

The First Circuit, however, reached a different conclusion. *See Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994). The court reasoned that § 12181(7) does not list only physical places and "[i]t would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA, but persons who purchase the same services over the telephone or by mail are not." *Id*.

Although the Seventh Circuit has not yet decided whether Title III regulates websites, it has twice suggested it agrees with the First Circuit's reasoning. In *Doe v. Mutual of Omaha Insurance Company*, the court explained that Title III's prohibition against discrimination means "that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, *Web site*, or other facility (whether in physical space or in *electronic space*) that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility in

5

the same way that the nondisabled do." 179 F.3d 557, 559 (7th Cir. 1999) (citing *Carparts*, 37 F.3d at 19) (emphases added).

Later, in *Morgan v. Joint Administration Board*, the court said:

The defendant asks us to interpret "public accommodation" literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation. An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store. The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services. What matters is that the good or service be offered to the public.

268 F.3d 456, 459 (7th Cir. 2001). In so doing, the court cited to both *Doe* and *Carparts*, as well as the other circuits' conflicting decisions in *Weyer*, *Ford*, and *Parker*. *Id*.

While *Magee*, 833 F.3d 530 (5th Cir. 2016), was decided after *Doe* and *Morgan*, that case is easily distinguishable. In *Magee*, blind customers sued a vending machine owner, arguing that the owner's glass-front vending machines, equipped with an entirely visual interface, failed to provide a meaningful accommodation that would allow blind customers to use the machines. *Id*. at 530–31. The Fifth Circuit granted the owner's motion to dismiss, holding that vending machines were not "sales establishments" and therefore were not "places of public accommodation" under the ADA. *Id*. at 535. *Magee*'s reasoning is inapplicable in the present action because there is no dispute that Dania is a sales establishment; Dania sells furniture in physical stores and online. *See* Dania Furniture, https://daniafurniture.com/ (last visited February 12, 2024).

There is also persuasive reasoning from this jurisdiction that elects to follow the Seventh Circuit's guidance and affirms the First Circuit's reasoning. *See Colon v. HY Supplies, Inc.*, No. 22 CV 5915, 2023 WL 7666740 (N.D. Ill. Nov. 15, 2023). In *Colon*, a visually-impaired and legally blind plaintiff sued an online retailer for discrimination because the retailer's website was not compatible with screen reading software. *Id*. at *1. In holding that "a 'place of public

accommodation' does not have to be a physical space," the court noted the Seventh Circuit's dictum in *Morgan* "was not a passing thought, but rather an explicit rejection of [defendant's] argument that a 'public accommodation' must be a physical site" which was "made while acknowledging the contrary holdings of other circuits." *Id*. at *6.

This court, too, elects to follow the Seventh Circuit's considered dictum that a place of public accommodation is not limited to physical spaces. *See Reich v. Cont'l Cas. Co*., 33 F.3d 754, 757 (7th Cir. 1994) (considered dictum "provides the best, though not an infallible, guide to what the law is, and it will ordinarily be the duty of a lower court to be guided by it"). To hold otherwise would allow all sales establishments, places of education, and other public accommodations operating exclusively online to fully deny access to visually impaired and blind individuals.

The ADA was enacted in 1990, at the dawn of the internet and well before online exchanges like those at issue here were possible. Without a doubt, the world has changed dramatically since then; so too have the challenges facing individuals with disabilities. As everyday life is increasingly facilitated online, the purpose of the ADA—to "address the major areas of discrimination faced day-to-day by people with disabilities" (§ 12101(b)(4))—is best served by protecting disabled individuals' ability to access the "economic and social mainstream of American life." H.R. Rep. No. 485, 101st Cong. 2d Sess., pt. 2, at 99 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 381 (the purpose of Title III is to "bring individuals with disabilities into the economic and social mainstream of American life . . . in a clear, balanced, and reasonable manner").

## II.  Disability-Based Discrimination

It is "discriminatory to subject an individual or class of individuals on the basis of a disability . . . to a denial of the opportunity of the individual or class to participate in or benefit

from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i). Dania argues that denying access to a website does not amount to an outright denial of goods and services. (Dkt. 16 at 10). Dania further posits that individuals who have trouble accessing its website should seek assistance "by calling Dania by phone, by sending an email, or seeking assistance in some other way." (Dkt. 16 at 2). But this disparate treatment is exactly what Title III proscribes. Discrimination includes:

> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations; [and]
>
> (iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

42 U.S.C. § 12182(b)(2)(A). Title III's specific prohibitions make clear that a barrier need only interfere with a plaintiff's ability to enjoy a public accommodation in a manner akin to that which nondisabled individuals enjoy. It is not necessary that the barrier completely preclude the plaintiff from accessing the goods and services. *See Davis v. Wild Friends Foods, Inc.*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542, at *13-14 (S.D.N.Y. July 5, 2023) (Under the ADA, a "barrier 'need only interfere with the plaintiff's full and equal enjoyment of the facility'—'it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way.'") (citing *Brown v. Mermaid Plaza Assocs.* LLC, 2018 U.S. Dist. LEXIS 132364, 2018 WL 2722454, at *7 (E.D.N.Y. Mar. 8, 2018)). To read the statute

otherwise would make it acceptable for a physical retail shop to deny access to its facility so long as disabled customers could call or email the shop to inquire about its inventory.

Here, Walsh alleged that she visited the Website twice, intending to buy the Hendrick Storage Coffee Table; that she wanted the coffee table specifically because of its storage capacity and style; and that because of access barriers on the Website, she was unable to complete her purchase. (Dkt. 1 at ¶¶ 39–46). But for Walsh's disability, she would have been able to independently navigate the Website and complete her purchase online. At this stage, Walsh has pled sufficient facts to show that she has been foreclosed from using Dania's Website "in the same way that the nondisabled do." *Doe*, 179 F.3d at 559 (7th Cir. 1999) (citing *Carparts*, 37 F.3d at 19). It is of no consequence that Walsh could have called or emailed Dania to complete her purchase or receive an oral recitation of Dania's inventory. Denying individuals with disabilities the opportunity to use or benefit from a website is discriminatory as defined by the ADA. *See Davis*, 2023 U.S. Dist. LEXIS 115542, at *14 (finding standing even though "neither of [the] alleged 'barriers'" completely prevented Plaintiff "from using the website or purchasing a product") (internal citation omitted).

Walsh sufficiently alleged the website was inaccessible to her by stating the specific access barriers she encountered and describing how those barriers impeded her ability to use the Website, so this claim survives.

### III. Claim for Monetary Damages

Damages are not recoverable by private parties under Title III of the ADA. *Ruffin v. Rockford Mem'l Hosp.*, 181 F. App'x 582, 585 (7th Cir. 2006) (holding that "[m]oney damages. . . are not available to private parties under Title III" and collecting cases from multiple circuits). Walsh did not respond to Dania's arguments against the award of monetary damages, thus any

9

potential arguments she may have in opposition are waived. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

## CONCLUSION

For the reasons above, the Court grants Dania's motion to dismiss claims for damages [15] and denies Dania's motion with respect to all other issues.

_____
Virginia M. Kendall
United States District Judge

Date: February 12, 2024